UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

SEMINOLE WALLS & CEILINGS CORP.  Case No. 6:01-bk-01966-KSJ
(Chapter 7)

    Debtor.
_____/

CARLA P. MUSSELMAN, CHAPTER 7
TRUSTEE FOR THE ESTATE OF
SEMINOLE WALLS & CEILINGS CORP.,

    Plaintiff,

v.  Adversary Proc. No. 6:04-ap-00077-KSJ

JOSEPH JASGUR, DARTLIN J. AFRICH,
AFRICH MAINTENANCE, INC., AFRICH
MANAGEMENT & INVESTMENT, INC.,
VINTAGE PARTNERS, INC., GENE
CHAMBERS, AS CHAPTER 7 TRUSTEE
FOR THE ESTATE OF ROBERT L. FOX,
THE FUNDING SOLUTIONS, INC., PITA
CORPORATION, and PAUL PHILIPSON,

    Defendants,
_____/

CARLA P. MUSSLEMAN, CHAPTER 7
TRUSTEE FOR THE ESTATE OF
SEMINOLE WALLS & CEILINGS CORP.,

    Plaintiff,

vs.  Adversary Proc. No. 6:04-ap-00079-KSJ

AFRICH MANAGEMENT & INVESTMENT,
INC., AFRICH MAINTENANCE, INC.,
DARTLIN J. AFRICH, AND PITA CORPORATION,

    Defendants.
_____/

**MEMORANDUM OPINION DENYING
DEFENDANTS' DARTLIN J. AFRICH, AFRICH
MAINTENANCE, INC., AFRICH MANAGEMENT &
INVESTMENT, INC., PAUL PHILIPSON AND
PITA CORPORATION'S DEMANDS FOR JURY TRIAL**

The issue is whether several of the defendants in these consolidated adversary proceedings are entitled to a jury trial.[1] After considering the pleadings, the evidence, and the law of the case established during the four-and-a-half years this bankruptcy case has been pending, the Court denies the various demands for a jury trial.

The defendants requesting a jury trial include Paul Philipson,[2] Pita Corporation, Dartlin J. Africh, and two closely held corporations controlled by Mr. Africh—Africh Maintenance, Inc. and Africh Management & Investment, Inc. All defendants timely demanded a jury trial.[3]

On March 13, 2001, the debtor, Seminole Walls & Ceilings Corporation, filed a petition seeking to reorganize its business under Chapter 11 of the Bankruptcy Code.[4] The debtor primarily operated a commercial dry wall installation business, but it also had a number of other somewhat unusual business interests. After a very long and contested confirmation process, a plan ultimately was confirmed on August 21, 2002 (Doc. No. 249 in the Main Case).

---

[1] These consolidated adversary proceedings came before the Court on September 7, 2005, at a pretrial conference and at a specially set evidentiary hearing on November 16, 2005, on (i) Dartlin J. Africh, Africh Maintenance, Inc. and Africh Management & Investment, Inc.'s Answer, Affirmative Defenses Request for Jury Trial (Doc. No. 122 in Adversary 77; Doc. No. 96 in Adversary 79); (ii) Defendant, PITA Corporation's, Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint Against Defendants and Demand for Jury Trial (Doc. No. 123 in Adversary 77; Doc. No. 97 in Adversary 79); (iii) Answer of Defendant, Paul Philipson, to Amended Complaint Against Defendants for Declaratory Relief, Breach of Contract, Fraudulent Transfer and Turnover (Doc. No. 119 in Adversary 77); (iv) Trustee's Objection to Demand for Jury Trial (Doc. No. 125 in Adversary 77; Doc. No. 98 in Adversary 79); and (v) the Africh Defendants' Response to Plaintiff's Objection to Jury Trial Demand (Doc. No. 128 in Adversary 77; Doc. No. 99 in Adversary 79).

[2] Paul Philipson demanded a jury trial but advised the Court that, if the jury trial demand was denied as to the other defendants, he would agree to have the matter heard without a jury. Philipson did not separately argue for a right to a jury trial. He simply wants a trial combined with the other defendants as soon as possible, regardless of whether the jury or the Court decides the issues.

[3] The Africh related defendants initially and timely demanded a jury trial in their original answer filed on May 6, 2004 (Doc. No. 6 in Adversary 77; Doc. No. 4 in Adversary 79). Pita Corporation initially and timely demanded a jury trial in its original answer dated August 6, 2004 (Doc. No. 17 in Adversary 77; Doc. No. 5 in Adversary 79, which was filed on May 17, 2004).

[4] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

The debtor consistently represented throughout the case that it owned Pita Corporation ("Pita"). The schedules of assets which the debtor filed at the initial stages of the case indicated that the debtor was the owner of Pita (Doc. No. 14 in the Main Case). The debtor's various Plans of Reorganization (Doc. Nos. 222, 244, 248) expressly stated "[t]he Debtor currently holds one hundred percent of the stock in Pita Corporation." The debtor's ownership of Pita is important to the jury trial issue because Pita claimed ownership of a potentially valuable asset that the debtor agreed to sell to pay its creditors under its confirmed plan.

This valuable asset is a series of photos and other memorabilia called the "Jasgur Collection." Indeed, at the very first hearing in this case, the debtor exhibited a small sample of these photos. The ownership of the Jasgur Collection is at the heart of the dispute in this case.

The Jasgur Collection includes, among other photos, rights, and memorabilia, the earliest professional photos of Norma Jeane Dougherty, later known as Marilyn Monroe, and the famous "Hollywood Canteen" collection. The small portion of photos shown to the Court was striking; the parties all agree the collection is valuable, although an exact value is not easily ascertainable. Certainly, to the extent creditors receive any substantial recovery in this case, it will be due to a successful sale of the Jasgur Collection and the debtor's entitlement to the proceeds.

The debtor represented throughout the case that Pita owned the Jasgur Collection. The debtor also consistently represented that the Jasgur Collection would be used to pay creditors of the debtor. Indeed, when the debtor ultimately confirmed its Plan of Reorganization, an essential element of the plan contemplated liquidation of the Jasgur Collection. The liquidation of the Jasgur Collection under the plan was a primary source of funds the debtor anticipated gathering to pay its creditors.

Robert Fox is the "General Manager" of the debtor and the President of Pita. Robert Fox and Pita also were active participants in the case. There is no question that both Fox and Pita were insiders and were intricately involved during the confirmation process.

There also is no factual dispute that Dartlin Africh and Africh Management & Investment, Inc. ("AMI") were active participants in the case. Dartlin Africh is a social friend of Robert Fox. Africh's children attend the same school as Fox's children. More relevant to this dispute is Africh's $120,000 loan to Fox in March 2000. The loan was made in two installments. The first portion, $70,000, was made by a check written on Africh's personal checking account, dated March 3, 2000. (Ex. No. 22.) The second portion of the loan, $50,000, was made by a check written on the account of AMI, dated March 22, 2000. (Ex. No. 21.) The loans were made to allow the debtor and Pita to allegedly purchase the Jasgur Collection.

These loans by Africh and AMI to the debtor, via Fox, also gave rise to the claims, subject to allowance or disallowance by this Court, filed by Africh and AMI in this Chapter 11 case. Specifically, either Africh, individually, or AMI filed four proofs of claim during the pendency of this case. (Ex. Nos. 3 through 6.) The claimants listed the Jasgur Collection as a portion of the collateral securing the repayment of the claims.

Some detailed discussion of the claims is helpful to understand how the ownership and value of the Jasgur Collection was intertwined with the claims filed by Africh and AMI. On July 9, 2001, Africh filed Proof of Claim 57 seeking, in part, repayment of the $70,000 loan. (Ex. No. 3.) (The claim also sought treble damages for a non-sufficient fund check tendered by the debtor to Africh.) Similarly, AMI simultaneously filed Proof of Claim 58 seeking repayment of the $50,000 loan and similar damages for a NSF check. (Ex. No. 4.) Both claims treated the loans as "secured" debts. Both claims attached a security agreement signed by Fox, as President of Pita, and by the debtor that granted Africh and AMI a security interest in an attached Promissory Note and Net

Revenue Distribution Agreement (the "Vintage Note").  In this attached note, Vintage Partners, Inc. promised to pay Pita $1.8 million for the purchase of the Jasgur Collection, pursuant to a separate asset purchase agreement.  Repayment of the note, in turn, was secured by "the photographic works of Joseph Jasgur"—the Jasgur Collection.  As such, the proofs of claims initially filed by Africh and AMI are indirectly secured by the debtor's interest in the Jasgur Collection.[5]  The claims are based on loans used by the debtor to purportedly purchase the Jasgur Collection, and the repayment arguably was secured, at least indirectly, by the Jasgur Collection.

Very recently, on June 16, 2005, and long after Africh and AMI had demanded a jury trial in these adversary proceedings, they filed formal withdrawals of their four proofs of claims.  (Ex. Nos. 10 and 11.)  The Court finds this belated withdrawal of the claims irrelevant in determining the defendants' right to a jury trial.  A party simply cannot file a claim and then later try to resurrect a right to a jury trial by belatedly withdrawing the claim.

In addition to filing proofs of claim, Dartlin Africh and AMI actively participated in this Chapter 11 case.  They filed ballots voting in favor of the debtor's plan and in favor of the treatment of the unsecured creditors.  (Ex. Nos. 8 and 9.)  Africh and AMI also filed several other pleadings and attended hearings in the case.  (Ex. Nos. 14 – 19.)  Under the debtor's plan, specific creditors were to receive payment upon the sale of the Jasgur Collection.  However, the class of unsecured creditors in which Africh and AMI were included was not one of the specified classes to receive proceeds from the sale of the Jasgur Collection.  Yet, Africh testified that he still intended to receive payment of his claims upon the sale of the Jasgur Collection and that Robert Fox assured him that this was so.

---

[5] Some time later, on May 14, 2002, as the still unresolved ownership issues relating to the Jasgur Collection became more contentious in the debtor's Chapter 11 case, Africh and Fox amended their claims to provide that the claims were "unsecured."  (Ex. Nos. 5 and 6.)

After the confirmation hearing, Africh monitored the sale of Robert Fox's attempts to liquidate the Jasgur Collection. Eventually, Robert Fox offered to sell the Jasgur Collection to Africh. To try to ensure that he would be paid if and when the Jasgur Collection was sold, Africh instructed his attorney, James Shepherd, to file, for the first time, a UCC-1 Financing Statement. (Ex. No. 26.) On March 17, 2003, a UCC-1 Financing Statement was recorded which claimed that AMI was the secured creditor of Vintage Partners, Inc. and Pita. The Jasgur Collection was listed as the collateral. Apparently, despite the different treatment under the debtor's plan, Africh, and perhaps Fox, still believed that Africh would be paid from the sale of the Jasgur Collection.

Due to concerns about the debtor's operations and its financial viability, the Court maintained a fairly close watch on this case. Regular status conferences were conducted during the post confirmation period. Regretfully, the Court's concerns were founded; the debtor's financial problems merely increased after confirmation. The debtor was not paying creditors as required under its confirmed plan. Conversion to a Chapter 7 liquidation case appeared imminent.

Two days before the scheduled hearing at which the case was converted to a Chapter 7 liquidation case, on March 31, 2003, the Jasgur Collection was transferred to Africh Maintenance, Inc. ("Africh Maintenance"), a second closely held corporation controlled by Mr. Africh. The Asset Purchase Agreement (Ex. No. 12), which allegedly transfers the Jasgur Collection to Africh Maintenance, recites that the consideration paid by Africh Maintenance to the seller is $200,000 cash plus the release of the claims filed in the bankruptcy case by Dartlin Africh and AMI. Therefore, Africh Maintenance's possible purchase of the Jasgur Collection directly relates to the allowance or disallowance of the claims filed by Africh and AMI in the debtor's bankruptcy. Moreover, the $200,000 cash portion of the transaction was paid from the personal funds of Dartlin and Linda Africh, not any monies or accounts maintained by Africh Maintenance.

Indeed, Africh Maintenance is controlled exclusively by Dartlin Africh,[6] even though Africh's former wife, Linda Africh, is the President of the company and may own 50 percent of the stock of Africh Maintenance. According to the testimony of Mrs. Africh, she does not make decisions on behalf of the company, was not involved in the decision to purchase the Jasgur Collection other than to send a wire transfer of the sales price from her and Dartlin Africh's personal equity account, and was not even aware that Africh Maintenance was a defendant in this adversary proceeding or had hired and paid lawyers to represent the defendant. She testified that the reason she was the President of the company was because "Dart was kind enough to let [her] have her own company." (Transcript, Nov. 10, 2005, pp. 46-47.) Indeed, the Court concludes that Mrs. Africh has very limited knowledge of what Africh Maintenance does, has no knowledge of its revenue or expenses, and is merely serving as a titular head of the company at Dartlin Africh's discretion. Finally, in interrogatory responses provided by Africh Maintenance, Linda Africh was not even listed as a party with knowledge of the lawsuit or of the transfer of the Jasgur Collection. Dartlin Africh runs, controls, and makes all decisions relating to Africh Maintenance.

On April 2, 2003, the Court conducted a hearing to determine whether to convert the case to a Chapter 7 proceeding. The debtor opposed conversion, contending that the recent infusion of $200,000 cash facilitated by Africh was enough to allow the debtor to pay some, but not all, of the distributions required under the confirmed plan. The debtor did not disclose the attempted transfer of the Jasgur Collection to Africh Maintenance two days earlier. Indeed, other than Fox,[7] and

---

[6] Dartlin Africh is the Vice President of Africh Maintenance and President of AMI. (Ex. No. 1, paragraph 2.)

[7] The Court again notes that the debtor made numerous recitations of its ownership of 100 percent of the stock of Pita. Also, Robert Fox and Pita, in their original answers to Plaintiff's Complaint in Adversary 77, admitted that the debtor was 100 percent owner of Pita Corporation [See Robert L. Fox's Answer (Doc. No. 8) and Pita Corporation's Answer (Doc. No. 17) to original Complaint (Doc. No. 1) in Adversary 77]. However, later, in Pita Corporation's answers to interrogatories (Ex. No. 25 presented at the 11/10/05 hearing), signed by Robert Fox as President of Pita Corporation, states, for the first time, that the owner of Pita Corporation is actually the Gail A. Williamsen Children's Trust. Pita further states that this trust owned the shares of Pita since 1998, well before the bankruptcy case. The interrogatory answers by Mr. Fox also reveal that he is the trustee of the trust.

possibly Africh, no one else at the hearing had any reason to believe the debtor, or its subsidiary, Pita, had just sold the estate's most valuable asset.

After finding the newly obtained $200,000 was insufficient to stop conversion, the Court converted this case to a liquidation case under Chapter 7 of the Bankruptcy Code. Carla Musselman was appointed as the Chapter 7 trustee. Shortly thereafter, she filed these two adversary proceedings.

The primary relief sought by the trustee in both adversary proceedings is the recovery of the Jasgur Collection. However, the claims asserted against the individual defendants differ. Focusing only on the claims made against Pita and the Africh-related entities (Dartlin Africh, AMI and Africh Maintenance), for purposes of resolving their demands for a jury trial, the trustee asserts the following claims:

> Pita Corporation:
> - Alter Ego/Piercing the Corporate Veil; and
> - Substantive Consolidation.
>
> Africh-Related Defendants:
> - Declaratory Judgment seeking a
>   (1) definition and description of the Jasgur Collection;
>   (2) a determination that the debtor is the owner of the Jasgur Collection free and clear of any liens, claims, or encumbrances, or, alternatively, has an ownership interest in or is entitled to a share of the proceeds of any sale of the Jasgur Collection;
>   (3) a determination of the rights of the parties to ownership of the Jasgur Collection; and
>   (4) granting other relief as the Court deems just and proper.
> - Turnover of the Jasgur Collection;
> - Avoidance of the post-petition transfer of the Jasgur Collection under Section 549 of the Bankruptcy Code;
> - Avoidance of a fraudulent transfer under Section 548 of the Bankruptcy Code and under Florida state law; and
> - Imposition of a constructive trust.

Based on these claims, both Pita and the Africh-related defendants timely demanded a jury trial. Moreover, there is no requirement for a party to file a motion to withdraw the reference as a condition precedent to timely demand a jury trial. The sole issue is whether the defendants are entitled to a jury trial.

The right to a jury trial is governed by the Seventh Amendment of the United States Constitution, which provides that the right to a jury trial shall be preserved for all "Suits at common law where the value in controversy shall exceed twenty dollars." The United States Supreme Court has formulated a two-prong test for determining if a litigant is entitled to a jury trial applying this standard set forth in the Seventh Amendment. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

First, the trial court must compare the "action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." Id. (quoting Tull v. United States, 481 U.S. 412, 417-418, 107 S. Ct. 1831, 95 L.Ed.2d 362 (1987). Second, a trial court "must examine the remedy sought and determine whether it is legal or equitable in nature." Id. As a general rule, claims seeking monetary relief or recovery are deemed legal in nature and require a trial by jury. Control Center, LLC v. Lauer, 288 B.R. 269, 278 (M.D.Fla. 2002)(citing Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 352, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998).

Applying this two-prong test to the claims asserted by the trustee against the defendants requesting a jury trial, the results differ. As to Pita, the trustee seeks either to pierce the company's corporate veil to determine that the debtor and Pita already actually are one legal entity, or, alternatively, to find that substantive consolidation of the two companies is appropriate. Both claims are entirely equitable in nature. No monetary relief is sought, and no legal claim is raised. As such, applying the two-prong test, Pita is not entitled to a trial by jury.

The result is different as to the Africh-related defendants. The trustee's claims against the Africh defendants are a mixed bag of both legal and equitable claims. On one hand, for example, the trustee seeks equitable relief to impose a constructive trust. On the other hand, however, the trustee seeks a monetary recovery by asking for the estate's share of any proceeds from the sale of the Jasgur Collection. As such, the trustee has asserted both legal and equitable claims against the Africh-related defendants. When an action involves a combination of both legal and equitable claims, "the right to jury trial on the legal claim, including all issues common to both claims, remains intact." Curtis v. Loether, 415 U.S. 189, 196 n.10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); Burns v. Lawther, 53 F.3d 1237, 1242 (11th Cir. 1995). The Africh-related defendants are entitled to a jury trial,[8] unless they have otherwise waived their right.

Parties indeed may waive their right to a jury trial. Specifically, in a bankruptcy proceeding, the United States Supreme Court has held that a party who chooses to file a proof of claim and who voluntarily subjects himself to the bankruptcy court's equitable power to allow or disallow the claim thereby forfeits or waives any existing right to a jury trial. Granfinanciera, 492 U.S. 33, 59; In re RDM Sports Group, Inc., 260 B.R. 915, 920 (Bankr. N.D.Ga. 2001)("[T]he creditor's pursuit of such recovery [by filing a proof of claim] will change the nature of any subsequent litigation against it, making such litigation part of the claims allowance process under which no jury trial right exists.").

In Langenkamp v. Culp, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), a creditor filed a proof of claim in a bankruptcy proceeding. The trustee later sued the creditor to recover a preferential payment. The Supreme Court held that the creditor had waived any right to a jury trial stating:

---

[8] Pursuant to 28 U.S.C. Section 157(e), a bankruptcy court may conduct a jury trial, but only if all parties have expressly consented. Here, the Africh-related defendants have not expressly consented to this Court conducting a jury trial. As such, if the defendants have not waived their right to a jury trial, the adversary proceedings would transfer to the district court for jury trial, upon completion of all pre-trial matters.

> In <u>Granfinanciera</u> we recognized that by filing a claim against a bankruptcy estate, the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, the action becomes part of the claims allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such, there is no Seventh Amendment right to a jury trial….Accordingly, a creditors right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.

<u>Langenkamp</u>, 498 US 44-45.

Here, Africh and AMI together voluntarily filed four proofs of claims in this bankruptcy case. The filed claims directly relate to the asset in dispute in this litigation—the Jasgur Collection. The defendants voluntarily submitted to the equitable jurisdiction of the bankruptcy court. The much belated withdrawal of the claims, long after these adversary proceedings were filed, cannot act to undo the prior waiver and consent to this Court's equitable powers. Based on this binding law as articulated by the Supreme Court, any right to a jury trial was waived when and at the time these defendants filed their claims. They are not entitled to a jury trial.

The only remaining issue is whether the last remaining defendant—Africh Maintenance—is bound by Dartlin Africh's waiver. The Court finds it is. Dartlin Africh, on behalf of himself and his related entities, actively participated in this case. The fact that he chose to purchase the Jasgur Collection in another related company controlled by him does not negate the waiver of any right to a jury trial.

Africh Maintenance is a closely held corporation owned and controlled by Dartlin Africh. He makes all decisions relating to the company, including the decision to "buy" the Jasgur Collection on the eve of the debtor's conversion of its failed Chapter 11 case to a Chapter 7 proceeding. The same lawyer represented Mr. Africh, AMI, and Africh Maintenance. Dartlin

Africh paid all the legal bills. (Ex. No. 28.) Indeed, the monies used to "purchase" the collection came from Mr. Africh's personal funds, not those of Africh Maintenance. Africh's personal control over the Jasgur Collection perhaps is best shown by the fact he currently hangs several of these rare photos in his home.

Further, a portion of the purchase price included the release of the claims filed by Africh and AMI in this bankruptcy case. Moreover, the asset, the Jasgur Collection, was the same asset which indirectly secured the claims filed by Mr. Africh. Africh Maintenance is so closely aligned with Mr. Africh individually and with his interest in the Jasgur Collection that the Court finds that Mr. Africh's waiver of his right to a jury trial extends to any such right held by Africh Maintenance.

Accordingly, for the reasons stated above, the Court will deny the defendants' demand for a jury trial. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED on January 18, 2006.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies to:

Roy S. Kobert, P.A. and Nicolette Corso Vilmos, Esquire, Broad and Cassel, P.O. Box 4961, Orlando, FL 32802-4961

Bradley M. Saxton, Esquire and Jennifer A. Jones, Esquire, Winderweedle, Haines, Ward & Woodman, P.A., P.O. Box 1391, Orlando, FL 32802-1391

Frank M. Wolff, Esquire, Wolff, Hill, McFarlin & Herron, P.A., 1851 W. Colonial Drive, Orlando, FL 32804

Debbie Van Neste, 1648 S. Crystal Lake Drive, Apt. 46, Orlando, FL 32806-8804

The Funding Solutions, Inc., Officer, Director, Managing or General Agent, 78 Harvard Avenue, Stamford, CT 06902

Joseph Yaron, 1318 N. Martel Avenue, W. Hollywood, CA 90046-4813

Richard Lee Barrett, Esquire, Barrett, Chapman & Ruta, P.A., P.O. Box 3826, Orlando, FL 32802-3826

Elizabeth A. Green, Esquire, Gronek & Latham, LLP, 390 N. Orange Avenue, Ste. 600, Orlando, FL 32801-1684

Tucker Byrd, Esquire, Greenberg Traurig, 450 S. Orange Ave., Ste. 650, Orlando, FL 32802

United States Trustee, 135 West Central Blvd., Room 620, Orlando, FL 32801