UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| SEMINOLE WALLS & CEILINGS CORP., | ) ) | Case No. 6:01-bk-01966-KSJ Chapter 7 |
| | ) | |
| Debtor. | ) ) | |

| | | |
|---|---|---|
| CARLA MUSSELMAN, TRUSTEE, | ) ) | |
| Plaintiff, | ) | Adversary No. 6:04-ap-77 |
| vs. | ) ) | |
| DEBBIE JASGUR, JOSEPH JASGUR, ROBERT L. FOX, DARTLIN J. AFRICH, AFRICH MAINTENANCE, INC., AFRICH MANAGEMENT & INVESTMENT, INC., VINTAGE PARTNERS, INC., BRADLEY E. WHITTLE, THE FUNDING SOLUTIONS, INC., JOSEPH YARON, PITA CORPORATION, PAUL PHILIPSON, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| CARLA MUSSELMAN, | ) ) | |
| Plaintiff, | ) | Adversary No. 6:04-ap-79 |
| vs. | ) ) | |
| AFRICH MANAGEMENT & INVESTMENTS, INC., AFRICH MAINTENANCE, INC., DARTLIN J. AFRICH, ROBERT L. FOX, PITA CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## SUPPLEMENTAL MEMORANDUM OPINION

After reviewing the convoluted facts and law involved in this case, the District Court, on remand,[1] asked this Court to clarify how PITA,[2] a dissolved Texas corporation, acquired any rights to certain physical assets—the California Assets and to 250 photos transferred under the Purchase Agreement—after the corporate dissolution occurred.  The issue is whether, under Texas law, a dissolved Texas corporation can obtain new assets after dissolution.  On this issue, the Court concludes that a dissolved Texas corporation may collect or acquire physical possession of tangible assets post-dissolution even when it cannot contract or pursue inchoate legal claims and causes of action post-dissolution.

After a multi-day trial, the Court entered a Memorandum Opinion making lengthy factual findings and addressing several issues, including whether a photographer named Joseph Jasgur[3] ever effectively transferred any assets to PITA (Doc. No. 278 in 6:04-ap-77).  At the time of all relevant transfers, PITA was an inactive Texas corporation, having forfeited its charter on February 12, 1999.

PITA entered into four separate contracts post-dissolution:

1. **Purchase Agreement** (January 6, 2000) - For $6,250, Jasgur agreed to sell PITA ten sets of photos, each set containing 25 black and white 11" x 14" images of Marilyn Monroe together with accompanying letters of authenticity.  The intellectual property rights for the photos remained with Jasgur.  In essence, PITA paid $6,250 for 250 photos, nothing more. (PITA also paid an additional $1,000 for a high quality negative it used in printing the photos.)

---

[1] The United States District Court for the Middle District of Florida, Orlando Division, issued the order on remand in this case on March 27, 2008 (Doc. No. 355 in 6:04-ap-77).  The parties requested oral argument on the remand issue, which was held on December 17, 2008.

[2] All terms used in this Supplemental Memorandum Opinion have the same definition as used in the Court's Memorandum Opinion, issued on April 2, 2007 (Doc. No. 278 in 6:04-ap-77).

[3] Sadly, Mr. Jasgur recently died on March 21, 2009.

2. **Exclusive Marketing Agreement** (February 1, 2000) - PITA and Jasgur entered into a general marketing agreement for PITA to market Jasgur's photos. The EMA did not convey any physical assets beyond those already conveyed under the Purchase Agreement or any intellectual property rights.

3. **California Purchase and Release Agreement** (March 17, 2000) - For $25,000, PITA, with Jasgur's consent, agreed to purchase physical assets (the "California Assets") Jasgur had left in a storage unit in California owned by Joseph Yaron. PITA promptly hired a moving van to transport 17,000 pounds of goods (still largely unidentified) from California to Florida.

4. **Asset Purchase Agreement** (November 4, 2000) - PITA entered into an APA to sell "the entire photographic works of Joseph Jasgur" to Vintage Partners, Inc.

The Court, in its prior Memorandum Opinion, concluded that, based on these four contracts, PITA paid cash to buy certain physical assets—the 250 photos and the California Assets—and, in addition, entered into two separate agreements—the EMA and the APA—which required further action by PITA and which were embroiled in state court litigation. Assuming that lawful physical possession of the tangible assets trumped any possible divestment argument that PITA never gained title to the 250 photos and the California Assets, the Court held that PITA owned those items but not the associated intellectual property rights. The Court also held that PITA lacked the ability to enforce any claim arising under the Purchase Agreement, the EMA, and the APA.

The District Court, on appeal, asked for clarification on how PITA could lawfully obtain physical assets but lose the ability to enforce other contractual rights when all of PITA's actions arose under post-dissolution contracts. The question is a good one.

Under Texas law,[4] a corporation who forfeits its charter is treated as a dissolved corporation. Tex. Bus. Corp. Act. Art. 7.12 (F)(1) (Vernon 2003). PITA was a Texas corporation that forfeited its charter on February 12, 1999. Therefore, PITA, which never sought reinstatement of its corporate charter,[5] was a dissolved corporation after that date.

Pursuant to Article 7.12(A) of the Texas Business Corporation Act, a dissolved corporation may continue its corporate existence for a period of three years from the date of dissolution for certain specific purposes, including the right to hold title to and liquidate any properties or assets that "remained in the dissolved corporation at the time of, or are *collected by the dissolved corporation after, dissolution*." (Emphasis added.) A dissolved Texas corporation, however, may not "continue its corporate existence for the purpose of continuing the business or affairs for which the dissolved corporation was organized." In effect, the statute directs a dissolved corporation to stop doing business and to turn its attention to liquidating its assets in an orderly manner over a three-year period.

Here, the difficulty arises because PITA, a dissolved corporation, signed four contracts between January and November 2000. Because these contracts and any claims arising under these contracts could not have existed on the date that PITA was deemed dissolved, February 12, 1999, under Texas law, PITA should not have entered into the agreements. The statute expressly prohibits a dissolved corporation from engaging in new business transactions. Therefore, as a consequence, PITA cannot sue to enforce or be sued by others who assert claims brought under any of the four agreements, *including* the Purchase Agreement under which PITA

---

[4] A corporation's rights are governed by the laws of its state of incorporation. *In re Air Safety Intern.*, 336 B.R. 843, 853 (S.D. Fla. 2005); *In re Aurora Invs., Inc.*, 134 B.R. 982, 984 (Bankr. M.D. Fla. 1991); *In re Bercu*, 293 B.R. 806, 809-810 (Bankr. M.D. Fla. 2003). Therefore, because PITA was a Texas corporation, Texas law controls.

[5] Although PITA arguably may have requested retroactive reinstatement of its corporate status from the Texas Secretary of State, nothing in the record indicates that PITA made this request during the wind-up period that expired on or about February 12, 2002.

obtained the 250 photos and the California Purchase and Release Agreement under which PITA obtained the California Assets.  Texas law logically imposes a due diligence-type duty on all contracting parties to confirm that the other party has the legal capacity to enter into a contract.  PITA lacked such capacity, and, as a result, neither contracting party can sue or be sued under the unauthorized agreement.

The issue then becomes what happens to the 250 photos and the California Assets.  PITA lawfully obtained these assets under impermissible post-dissolution contracts.  No party can enforce the terms of the post-dissolution contracts.  Yet, PITA paid the rightful owners for these assets—Yaron $25,000 for the California Assets, and Jasgur $6,250 for the 250 photos.  In essence, PITA used its cash to collect the tangible physical property.  Article 7.12(a)(3) of the Texas Business Corporation Act allows a dissolved corporation to "collect" assets after dissolution.  The District Court queries whether acquiring new assets post-dissolution falls within this catch-all.  This Court would hold that, at least in this case, it does.

The terms "collect" and "acquire" have synonymous meanings.  The verb, "collect," is defined in the Webster's Third New International Dictionary (1993) as "to gather together into a band, group, assortment or mass."  The verb, "acquire," similarly is defined in the same dictionary as "to come into possession or control."  Both verbs infer that the actor is placing items under his control.  Neither definition distinguishes between whether the actor is collecting or acquiring new items or simply gathering together items already in the actor's possession.  For example, one can collect "new" shells at a beach or collect "old" laundry from one's dryer.

The terms collect and acquire are interchangeable in virtually every context.  Indeed, Roget's International Thesaurus (5th Ed.) uses "collect" as a synonym for "acquire."  The meanings of the two terms do not vary according to whether one is merely gathering previously owned items or instead obtaining new assets.

No Texas court has distinguished between the terms "collect" and "acquire" or whether a dissolved Texas corporation can *permissibly* collect and *impermissibly* acquire assets during its post-dissolution, wind-up period. The Texas statute merely provides that a dissolved corporation cannot continue the same type of business which the dissolved corporation was organized to perform. Although the record is largely devoid of the purpose for which PITA actually was created, no party argues that PITA was created to buy photos from Jasgur or to purchase assets Jasgur had stored in Yaron's storage unit. The fact that PITA purchased these assets post-dissolution does not automatically divest them of rightful title to the assets.

Moreover, although forfeiture of a Texas corporation's charter causes an involuntary dissolution, such as PITA's in this case, the corporation continues to exist for three years for the limited purposes delineated in the statute. Significantly, the corporation continues to hold title to any property or assets during this three-year period. *First Trust Corporation TTEE FBO v. Edwards*, 172 S.W. 3d 230, 241 (Tex. App.-Dallas, 2005). After the three-year wind-up period concludes, the corporation's shareholders obtain the assets. *Lowe v. Farm Credit Bank of Texas*, 2 S.W.3d 293 (Tex. App.-San Antonio, 1999); *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W. 2d 247 (Tex. App.-Houston 1st Dist., 1995).

As opposed to all other claimants, PITA held the best title to the photos and the California Assets at the time the assets were collected. PITA used its existing assets, its cash, to buy the goods. Under the Purchase Agreement, Jasgur sold 250 photos to PITA for a cash payment of $6,250. He did not sell any intellectual property rights to the photos, other than providing letters of authenticity. PITA may or may not be able to resell the photos, but, as between Jasgur and PITA, the corporation rightfully is entitled to retain, and, possibly, transfer the 250 photos.

The situation is even clearer under the California Purchase and Release Agreement. As explained in the prior Memorandum Opinion, Yaron, not Jasgur, was the rightful owner of the

17,000 pounds of tangible assets stored in the storage unit.  PITA paid $25,000 for these items. Jasgur supported and consented to the sale.   Mr. Yaron further has clearly and unequivocally stated he has no interest in the California Assets, which constitute a portion of the Jasgur Collection.  Several years ago, on April 8, 2005, Mr. Yaron completed an affidavit (Doc. No. 74 in Adversary Proceeding 6:04-ap-77) stating that he did not retain possession of any portion of the Jasgur Collection and did "not claim any interest in any portion of the Jasgur Collection." Further, he consented to the entry of an order declaring that he had no interest, claim, or right to the Jasgur Collection.[6]

Regardless of whether PITA found the assets in a dumpster, picked them up off the street, or obtained them through two non-enforceable contracts, no one has a better claim to the tangible assets than PITA.  This is not a case where a dissolved corporation is continuing in business *ad infinitum*.  About one year after its dissolution, but well within the three-year orderly liquidation period, PITA, paying cash for the goods in a simple exchange transaction, collected property that may have some value, albeit through entering into two non-enforceable contracts.  PITA held sufficient title and interest in the property even though it was a dissolved Texas corporation.

Further, for purposes of argument, suppose that the Court concluded that PITA's acquisition of the 250 photos and the California Assets was prohibited.  Who would have better title to the property?  Would Jasgur, who received $6,250 and who retained the original negatives for the photos and who could simply print more, get the 250 prints back?  Could the Court force Yaron to pay the cost to ship 17,000 pounds of scattered materials back to California, when he clearly claims no interest in the property?  Should the property escheat to either the state of Florida or California?

---

[6] The plaintiff recently filed a Motion for Final Judgment (Doc. No. 365) asking this Court to enter a final judgment in favor of the plaintiff and against Mr. Yaron, consistent with his affidavit and a later stipulation.  The Court will grant this motion and enter the requested Final Judgment simultaneously with the entry of this Supplemental Memorandum Opinion.

These results appear nonsensical. Jasgur sold 250 photos to PITA and was paid $6,250. Yaron, the rightful owner of the California Assets, received $25,000 and now disclaims any interest in them. The Court concludes, consistent with its prior Memorandum Opinion, that although no party may sue or be sued under any of the four post-dissolution agreements, PITA held good title to the 250 photos and the California Assets. Although the location, identity, and value of these items remain unknown, the Court again concludes that PITA *did* obtain an interest in these assets and, at least at the time this bankruptcy case was filed on March 13, 2001, held the best title possible under the circumstances.

Hopefully, this clarification and the pragmatic result will assist the parties and the District Court in reviewing the decision for accuracy. Because the District Court vacated a portion of the prior Memorandum Opinion and related Amended Final Judgment (Doc. No. 292 in 6:04-ap-77), a Second Amended Final Judgment consistent with this Supplemental Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on March 31, 2009.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtor:  Seminole Walls & Ceilings Corp., 333 E. Landstreet Road, Orlando, FL  32824

Debtor's Counsel:  Frank M. Wolff, 1851 West Colonial Drive, Orlando, FL  32804

Trustee:  Carla Musselman, 1619 Druid Road, Maitland, FL  32751

Trustee's Counsel:  Bradley M. Saxton, Jennifer A. Jones, P.O. Box 1391, Orlando, FL  32802-1391

Africh Defendant's Counsel:  Roy S. Kobert, 390 North Orange Avenue, Suite 1100, Orlando, FL  32801

Defendant Jasgur's Counsel:  Elizabeth A. Green, Esquire, 390 N. Orange Avenue, Suite 600, Orlando, FL  32801

Richard L. Barrett, Barrett Chapman & Ruta PA, 18 Wall Street, Orlando, FL  32801

Tucker Byrd, Esquire, 450 S. Orange Avenue, Suite 650, Orlando, FL  32801-3311

United States Trustee, 135 W. Central Blvd., Suite 610, Orlando, FL  32801